IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

CHARLES F. JONES )
)
v. ) No. 3:09-0951
) Judge Wiseman/Bryant
SOCIAL SECURITY ADMINISTRATION )

To: The Honorable Thomas A. Wiseman, Jr., Senior Judge

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c), to obtain judicial review of the final decision of the Social Security Administration ("SSA" or "the Administration"), through its Commissioner, denying plaintiff's application for disability insurance benefits ("DIB") and supplemental security income ("SSI"), as provided under the Social Security Act ("the Act"). The case is currently pending on plaintiff's motion for judgment on the administrative record (Docket Entry No. 14), to which defendant has responded (Docket Entry No. 18). Plaintiff has further filed a reply in support of his motion. (Docket Entry No. 21) Upon consideration of these papers and the transcript of the administrative record (Docket Entry No. 11),[1] and for the reasons given below, the undersigned recommends that plaintiff's motion for judgment be DENIED, and that the decision of the SSA be AFFIRMED.

---

[1] Referenced hereinafter by page number(s) following the abbreviation "Tr."

## I. Introduction

Plaintiff filed his DIB and SSI applications in October 2006 (Tr. 96-105, 115). He had filed prior applications that were ultimately denied by decision of Administrative Law Judge ("ALJ") Donald E. Garrison on September 18, 2006. (Tr. 39-46) After initially alleging disability as of March 1, 2003, due to a bulging disc in his lower back and nerve pain in his left leg (Tr. 119), plaintiff amended his alleged onset date to February 1, 2007. (Tr. 19)

Plaintiff's current claims were denied at the initial and reconsideration levels of review by the state agency, whereupon plaintiff requested and received an ALJ hearing, again before ALJ Garrison. (Tr. 16-35) The hearing was held on February 17, 2009, and plaintiff appeared with counsel and gave testimony, as did an impartial vocational expert retained by the agency. At the conclusion of the hearing, the ALJ took the matter under advisement, until April 28, 2009, when he issued a written decision finding plaintiff not disabled. (Tr. 8-15) The ALJ's decision contains the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.

2. The claimant has not engaged in substantial gainful activity since February 1, 2007, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairment: lumbar degenerative disc disease with spondylosis (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) that is limited to performing occasional climbing, balancing, stooping, crouching, kneeling and crawling; performing

no overhead work; and the option to stand, walk or sit at will in an 8 hour workday.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on June 21, 1961 and was 45 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from February 1, 2007 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 10-11, 13-15)

On September 4, 2009, the Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 1-3), thereby rendering that decision the final decision of the Administration. This civil action was thereafter timely filed, and the court has jurisdiction. 42 U.S.C. §§ 405(g), 1383(c)(3). If the ALJ's findings are supported by substantial evidence, based on the record as a whole, then those findings are conclusive. Id.

## II. Review of the Record

The medical record is rather limited, but reveals plaintiff's difficulties with lower back pain stemming from lumbar disc pathology. Dr. Antoinne Able has been plaintiff's primary care provider during the period relevant to this case (Tr. 212-19, 228-53), and has diagnosed plaintiff with lumbar disc disease and myofascial pain, as well as left femoral neuropathy. Dr. Able has treated plaintiff's pain complaints from 2004 through 2008, with prescription medications including, at various times, anti-inflammatories, narcotic painkillers, tricyclic antidepressants, and muscle relaxants. (Tr. 185) He has further administered trigger point steroid injections twice during the relevant period, on January 18 and March 28, 2008. (Tr. 234, 240) Plaintiff has reported to Dr. Able that his medications and trigger point injections are helpful. (Tr. 228, 245)

In December 2006, plaintiff was seen by Dr. Bruce Davis, M.D., for a consultative examination at government expense. The examination revealed tenderness with paraspinal muscle spasm and reduced thoracolumbar range of motion. He displayed "gait limp (left leg pain, unsteadiness) with unsteady gait maneuver attempts (heel, toe, & tandem) across exam room without assistance." (Tr. 201) He had normal neurological functioning and normal muscle strength in his neck and arms. Dr. Davis diagnosed plaintiff's back impairment as "Musculoskeletal disease: lumbar disc work injury," and opined that during an eight-hour workday plaintiff could lift/carry up to twenty pounds occasionally and ten pounds frequently, could stand/walk up to four out of the eight hours, and could sit for the full eight hours. He further opined that plaintiff had limited ability to bend, squat, climb, and should be limited in exposure to heights. (Tr. 202)

Two nonexamining physicians reviewed plaintiff's medical file and offered opinions similar to that of Dr. Davis, in January and March of 2007. (Tr. 203-10, 220-27)

On January 3, 2007, Dr. Able wrote a letter at plaintiff's request concerning his functional limitations, including the following language:

> I have known the patient for several years, during which he has held and lost jobs as a result of injuries to his low back. The patient has been compliant with most therapeutic interventions, with recurrent episodes of impairment after attempts at rehabilitation.
>
> Based on medical findings, the patient will continue to have limitations in long sitting, standing, lifting, even riding on long trips in trucks. The patient will have difficulty as well with sustained vibration, such as operating lawn equipment or traveling distances in trucks or the like. The majority of his limitations are pertinent to low back injury and muscle strains sustained. I suspect that the patient has limited education in terms of office skills or jobs beyond manual labor based on interviews with the patient. He has no difficulty in hearing or speaking.

(Tr. 211)

On February 2, 2009, Dr. Able completed a medical source statement of plaintiff's ability to do work-related activities, in which he opined that plaintiff's "marked tenderness in [bilateral] quadratus lumbar paraspinal muscles," along with degenerative changes in his lumbar spine, caused him to be limited to lifting up to 50 pounds on an occasional basis, and up to 20 pounds on a frequent basis, while also being limited to carrying up to 50 pounds on an occasional basis, and 10 pounds on a frequent basis. (Tr. 254) Dr. Able further opined that plaintiff was limited to two total hours each of sitting, standing, and walking during an eight-hour workday, accounting for only six of the eight work hours. When prompted to explain what activity plaintiff would need to spend the remaining two work hours doing, Dr. Able responded only that plaintiff would have to alternate between

5

positions. (Tr. 255) Dr. Able went on to state that plaintiff did not require the use of a cane to ambulate; that he could perform occasional manipulative movements except for pushing/pulling; that he could never operate right foot controls because he had right lower extremity shooting pain; that he could occasionally climb stairs and ramps and balance, but could never perform other postural maneuvers; that he had several environmental restrictions, and, that his pain did not preclude him from performing any of the basic requirements of daily living such as shopping, using public transportation, preparing simple meals, and caring for his personal hygiene. (Tr. 255-59)

At the hearing on February 19, 2009, plaintiff testified that he was unable to work due to back pain, right shoulder pain, and leg problems. (Tr. 25-29) He testified that he would lie down and used a heating pad to help control his symptoms, but stopped taking ibuprofen because it made him itch and feel differently. (Tr. 30) He testified that he could lift only ten pounds, sit for only thirty minutes at a time, and stand for only thirty to forty-five minutes before needing to lie down or sit. (Tr. 30-31)

In response to the ALJ's hypothetical question regarding the availability of light work requiring no more than occasional postural maneuvers and allowing for an option to sit or stand at will, the vocational expert identified 455 parking lot attendant jobs in Tennessee (42,132 jobs in the nation), 625 surveillance systems monitor jobs in Tennessee (33,500 jobs in the nation), and 2,000 cashier jobs in Tennessee (20,000 jobs in the nation). The expert stated that these jobs could be performed under the limitations assessed by Dr. Davis, but that Dr. Able's restriction to less than the full eight hours of sitting, standing, or walking would preclude full time work. (Tr. 32-22)

### III. Conclusions of Law

#### A. Standard of Review

This court reviews the final decision of the SSA to determine whether that agency's findings of fact are supported by substantial evidence in the record and whether the correct legal standards were applied. Elam ex rel. Golay v. Comm'r of Soc. Sec., 348 F.3d 124, 125 (6th Cir. 2003). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007)(quoting Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994)). Even if the evidence could also support a different conclusion, the SSA's decision must stand if substantial evidence supports the conclusion reached. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 389 (6th Cir. 1999).

#### B. Proceedings at the Administrative Level

The claimant has the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's "physical or mental impairment" must "result[] from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3). In proceedings before the SSA, the claimant's case is considered under a five-step sequential evaluation process, described by the Sixth Circuit Court of Appeals as follows:

1) A claimant who is engaging in substantial gainful activity will not be found

> to be disabled regardless of medical findings.
>
> 2) A claimant who does not have a severe impairment will not be found to be disabled.
>
> 3) A finding of disability will be made without consideration of vocational factors, if a claimant is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the Regulations. Claimants with lesser impairments proceed to step four.
>
> 4) A claimant who can perform work that he has done in the past will not be found to be disabled.
>
> 5) If a claimant cannot perform his past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

Cruse v. Comm'r of Soc. Sec., 502 F.3d 532, 539 (6th Cir. 2007)(citing, e.g., Combs v. Comm'r of Soc. Sec., 459 F.3d 640, 642-43 (6th Cir. 2006)(en banc)); 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b)-(f).

The SSA's burden at the fifth step of the evaluation process can be carried by relying on the medical-vocational guidelines, otherwise known as "the grids," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. See Wright v. Massanari, 321 F.3d 611, 615-16 (6th Cir. 2003). Otherwise, the grids cannot be used to direct a conclusion, but only as a guide to the disability determination. Id.; see also Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990). In such cases where the grids do not direct a conclusion as to the claimant's disability, the SSA must rebut the claimant's *prima facie* case by coming forward with proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert ("VE") testimony. See Wright, 321 F.3d at 616 (quoting Soc. Sec. Rul. 83-12, 1983 WL 31253, *4

(S.S.A.)); see also Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity ("RFC") for purposes of the analysis required at steps four and five above, the SSA is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. See 42 U.S.C. §§ 423(d)(2)(B), (5)(B); Foster v. Bowen, 853 F.2d 483, 490 (6th Cir. 1988).

C. Plaintiff's Statement of Errors

Plaintiff asserts several grounds for reversal of the ALJ's decision.

First, plaintiff argues that the ALJ erroneously failed to account for plaintiff's lack of insurance and resulting inability to afford certain medical treatment, while citing the sparse medical record as reason for discounting plaintiff's testimony as to the severity of his back pain. Plaintiff argues that the only treatment he was able to afford was that provided by Nashville General Hospital in the form of painkilling injections, but that the hospital did not dispense prescriptions for free. While it is true that a claimant's inability to afford appropriate medical treatment is a factor that an ALJ must consider, SSR 96-7p, 1996 WL 374186, at *7-8 (S.S.A. July 2, 1996), here this factor was not particularly well presented before the ALJ, and certainly is not apparent from the medical record. While plaintiff's counsel addressed the matter in a prehearing letter to the ALJ, stating that plaintiff has been without insurance since his June 2003 accident (Tr. 198-99), and there are two references to it in the hearing transcript (Tr. 19, 26), the testimonial and medical evidence does not support the assertion that plaintiff was unable to obtain prescription medication. Insured or not, it appears that plaintiff received ample medical testing and prescription medication in

9

the years following his accident. (Tr. 43) In a telephonic interview with an agency examiner on February 6, 2007, plaintiff reported that he filled his prescriptions at a nearby pharmacy. (Tr. 153) On March 23, 2007, plaintiff reported that he took five prescription pain medications as prescribed by Dr. Able, without significant side effects. (Tr. 185) In November 2008, plaintiff reported taking prescription ibuprofen and sertraline (Zoloft). (Tr. 197) Plaintiff testified at his hearing in February 2009 that he was continuing to take Zoloft, and that he stopped taking prescription strength ibuprofen because it caused itching, not because he could not afford it. (Tr. 26, 30) In short, the record does not support plaintiff's alleged inability to afford prescription pain medication.

Plaintiff further argues that the ALJ did not comply with the requirement of giving good reasons for discounting the weight of his treating physician's opinion, specifically the opinion that he was unable to sit, stand, or walk for prolonged periods due to his back impairment, and that his RFC finding was likewise flawed by its failure to accredit the treating physician's opinion or plaintiff's testimony as to his limitations. A treating source opinion is entitled to controlling weight pursuant to 20 C.F.R. § 404.1527(d)(2) if it is well supported by objective, clinical evidence and not substantially opposed on the record. Even where such an opinion is not entitled to controlling weight, the Sixth Circuit has stated that "in all cases there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference. . . ." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 242 (6th Cir. 2007). Accordingly, ALJs must provide "good reasons" for discounting the weight of a treating source opinion. See 20 C.F.R §§ 404.1527(d)(2), 416.927(d)(2); Rogers, 486 F.3d at 242 ("[T]he ALJ must provide 'good reasons' for discounting treating physicians'

opinions, reasons that are 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'") (quoting Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5). The Sixth Circuit has described this regulatory requirement as an "important procedural safeguard" that the agency cannot disregard in an *ad hoc* fashion. Bowen v. Comm'r of Soc. Sec., 478 F.3d 742, 747 (6th Cir. 2007) (quoting Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004)).

The ALJ here gave the following rationale related to Dr. Able's opinion:

> Records from Dr. Able show an ability to perform at a higher level than described in his medical source statement. Records also show that the claimant was much improved with steroid injections and medications. Furthermore, this assessment is not consistent with or supported by the record as a whole. The claimant testified at the hearing that he was not taking any pain medications; he was only using a heating pad and lying down, indicating his symptoms are not as severe as alleged. There are no additional laboratory findings documenting any worsening of symptoms or decreased ranges of motion in his back or neck. Nothing significant has been added to the record by way of new impairments or worsening of existing impairments to support a decline in functioning since the above assessments were made. The claimant has received treatment for the alleged impairment(s), but that treatment has been essentially routine and/or conservative in nature. . . .

(Tr. 13) In his medical source statement, Dr. Able opined that plaintiff's "marked tenderness in [bilateral] quadratus lumbar paraspinal muscles," along with degenerative changes in his lumbar spine, caused him to be limited to lifting up to 50 pounds on an occasional basis, and up to 20 pounds on a frequent basis, while also being limited to carrying up to 50 pounds on an occasional basis, and 10 pounds on a frequent basis. (Tr. 254) Dr. Able further opined that plaintiff was limited to two total hours each of sitting, standing, and walking during an

11

eight-hour workday, accounting for only six of the eight work hours.[2] When prompted to explain what activity plaintiff would need to spend the remaining two work hours doing, Dr. Able responded only that plaintiff would have to alternate between positions. (Tr. 255) The vocational expert testified that all full-time work would be precluded under this assessment, since it does not allow for a full work day. (Tr. 33)

The undersigned finds that the reasons given by the ALJ for rejecting, in part, the assessment of Dr. Able are good and sufficient. In fact, the ALJ's rejection of Dr. Able's assessment amounts to a rejection of the limitation to sitting no more than two total hours out of eight. The vocational expert testified that it was Dr. Able's opinion that plaintiff could sit, stand, and walk for no more than six hours in combination which prevented him from performing available light work under the restrictions assigned by Dr. Able. (Tr. 33) The consultative examiner, Dr. Davis, whose opinion the ALJ credited as being generally well supported by the weight of the evidence, in fact assigned more significant lifting and carrying restrictions than did Dr. Able, and agreed that plaintiff could spend a maximum of four hours out of eight standing and walking. (Tr. 202) These opinions confirm, and the ALJ implicitly found, that plaintiff's complaints of significant lower back pain are largely credible, as borne out by Dr. Davis' examination findings of tenderness and spasm of the paraspinal musculature, slow position change, reduced thoracolumbar flexion, incomplete squatting, and gait limp with unsteady gait maneuvers across the examination room. (Tr.

---

[2]This difficulty with sustained sitting and standing had formed the basis for an earlier opinion by Dr. Able regarding plaintiff's functional limitation, though Dr. Able in that opinion letter also referenced plaintiff's limited education as limiting his ability to obtain non-manual labor type work. (Tr. 211)

12

201) Despite these findings, Dr. Davis did not believe that plaintiff's pain would limit his ability to sit during the workday. (Tr. 202) While the ALJ adopted instead Dr. Able's opinion that plaintiff's pain was significant enough to require the ability to alternate positions at will between sitting and standing, he was justified in finding that with that accommodation, plaintiff could endure eight-hour workdays. "The weight given a treating physician's opinion on the nature and severity of impairments depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record." Skinner v. Astrue, 2010 WL 1754173, at *7 (M.D. Tenn. Apr. 30, 2010). As the ALJ noted, Dr. Able did not order any new diagnostic tests in monitoring plaintiff's lower back condition, and his treatment notes reveal that the prescription medications and intramuscular injections plaintiff received were helpful in relieving his pain. Moreover, there is no indication in those notes of any uncertainty about continuing that conservative course of treatment, versus seeking other, more aggressive methods of symptom control. On the questionnaires plaintiff filled out prior to receiving each injection, he did not generally indicate any functional problems with caring for himself or his home, other than walking or getting up from a chair or bed. (Tr. 229, 231, 237, 238, 242, 244, 246; but see Tr. 248, 253) Finally, plaintiff testified at the hearing that his current efforts at pain relief included only use of a heating pad and lying down, a factor the ALJ deemed inconsistent with other testimony regarding his functional limitations. (Tr. 13) Thus, while the ALJ found plaintiff to be significantly limited by his back pain, he appropriately discounted plaintiff's credibility to some degree after finding conflicts among the medical reports, plaintiff's testimony, and other evidence of record. Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 532 (6th Cir. 1997). This credibility finding is due great weight and deference on judicial review, Jones v.

13

Comm'r of Soc. Sec., 336 F.3d 469, 476 (6th Cir. 2003), and no grounds for setting it aside appear from the ALJ's decision or the evidentiary record in this case.

On this record with its variety of evidence related to plaintiff's exertional abilities, including opinions from all medical sources but Dr. Able that plaintiff could engage in a range of light work,[3] the undersigned finds substantial support for the ALJ's partial rejection of Dr. Able's opinion on his way to finding that plaintiff could perform light work requiring no more than occasional postural activities and allowing for plaintiff to switch freely between sitting and standing. See Skinner, supra at *8.

The undersigned finds no merit in plaintiff's remaining claims of error. As stated in defendant's brief, the authorities plainly allow for the possibility of a sit/stand option during the performance of light exertional work, and for the vocational impact of such accommodation in relevant markets to be determined by consulting a vocational expert. See, e.g., Sharp v. Barnhart, 152 Fed. Appx. 503, 506-07 (6th Cir. Oct. 26, 2005), and Bennett v. Astrue, 2008 WL 345523, at *5-6 (W.D. Ky. Feb. 7, 2008) (citing, e.g., SSR 83-12). Here, that vocational impact was proven significant, leading to plaintiff's argument that the number of jobs identified as available in the Tennessee economy is not significant.

Moreover, it is plainly within the vocational expert's realm to offer an opinion,

---

[3] The nonexamining physicians hired by the state agency to review plaintiff's medical file agreed with Dr. Davis that plaintiff could be expected to perform light work with reduced walking and occasional postural activities. (Tr. 203-10, 220-27) As mentioned above, Dr. Able opined that plaintiff could lift/carry up to the fifty pounds required by medium work, but could only sit, stand, and walk for two hours apiece. Meanwhile, plaintiff testified at his hearing that he could only lift approximately ten pounds, sit for thirty minutes, stand for thirty to forty-five minutes, and walk half a block. (Tr. 30-31) He had previously indicated in agency paperwork that he could not stand for more than ten minutes. (Tr. 167)

14

based on personal experience and review of other sources, as to the availability of jobs identified in the Dictionary of Occupational Titles ("DOT") and capable of allowing the option to sit or stand at will, even though the DOT does not itself recognize any particular job's amenability to a sit/stand option as such.  E.g., Allshouse v. Comm'r of Soc. Sec., 2008 WL 4372646, at *10 (E.D. Mich. Sept. 19, 2008).  It has been held that no conflict between the testimony of the expert and the DOT is created by the mere imposition of a sit/stand option, such that would require resolution by the ALJ in order to pass muster.[4]  E.g., Walton v. Comm'r of Soc. Sec., 2009 WL 2905952, at *9 (E.D. Mich. Sept. 8, 2009).  The expert in this case testified that his testimony was consistent with the DOT except where otherwise indicated.  (Tr. 24)  He explained that, consistent with the DOT, the first two jobs he identified as compatible with the sit/stand option existed in numbers that did not need to be reduced due to the requirement that the option be exercisable at will.  It was further explained that the third job, that of cashier, would be reduced in number to the level of ten percent of the DOT figure, because the DOT job of "light cashier" could only be performed with the allowance for sitting and standing at will in limited settings, such as "a booth self-service gas station type of situation." (Tr. 33)  Thus, the expert explained the only item of inconsistency with the DOT, and there was no apparent or actual conflict that the ALJ would have been obliged to resolve in order to properly rely on the expert's testimony.

        As to the number of jobs identified by the vocational expert, plaintiff argues

---

[4]Social Security Ruling 00-4p requires the ALJ to ask the vocational expert on the record about any conflicts with the DOT, obtain a reasonable explanation for any conflict, and explain the resolution of any conflict before relying upon the expert's testimony.  2000 WL 1898704 (S.S.A. Dec. 4, 2000).

that the 3,080 positions available in the Tennessee regional economy are insignificant. Under the Social Security Act, once a claimant has demonstrated the inability to return to his past relevant work, the SSA must demonstrate the availability of other work existing in significant numbers in the national economy. "The Social Security Act, as amended, provides that 'work which exists in the national economy means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.'" Harmon v. Apfel, 168 F.3d 289, 292 (6th Cir. 1999) (quoting 42 U.S.C. § 423(d)(2)(A)). Such work does not include "[i]solated jobs that exist only in very limited numbers in relatively few locations outside of the region where [plaintiff] live[s]...." Id. (quoting 20 C.F.R. § 404.1566(b)). In addition to the 3,080 relevant parking lot attendant, surveillance systems monitor, and cashier jobs existing in Tennessee, the vocational expert in this case also testified to the incidence of those jobs nationwide, establishing in excess of 95,600 jobs available nationally. (Tr. 32-33)

This is not an issue determinable by raw numbers, but is dependent upon the context of, e.g., the individual claimant's level of impairment, the reliability of his testimony, and the reliability of the vocational expert's testimony. Hall v. Bowen, 837 F.2d 272, 275 (6th Cir. 1988). While plaintiff cites cases in which lesser numbers of jobs existing regionally (in different states) and nationally were found to be insignificant, the undersigned is persuaded of the significance of the number of jobs identified here by comparison to the claimant in Hall, whose need for an option to sit, stand, and walk at will limited the available sedentary job base to 1,350 jobs in a nine-county area of Ohio, a number of jobs found significant by the ALJ in that case and affirmed by the Sixth Circuit. See also Putman v. Astrue, 2009 WL

838155, at *3 (E.D. Tenn. Mar. 30, 2009) ("The Court recognizes that 200-250 positions in the region and 75,000 positions in the national economy is not an overwhelming number. Other courts considering this issue, however, have found that a similar number of jobs constitutes significant work in the national economy." (citing cases)); Bull v. Comm'r of Soc. Sec., 2009 WL 799966, at *6 (N.D.N.Y. Mar. 25, 2009) (citing cases). Thus, the undersigned finds that the vocational expert's testimony in this case provides substantial evidentiary support for the finding of a significant number of other jobs in the economy which plaintiff could perform, particularly as there is no evidence or even argument that such jobs are isolated outside of the region where plaintiff lives, so as to render the raw numbers insignificant.

## IV. Recommendation

In light of the foregoing, the Magistrate Judge recommends that plaintiff's motion for judgment on the administrative record be DENIED, and that the decision of the SSA be AFFIRMED.

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. Thomas v. Arn, 474 U.S. 140 (1985); Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004)(en banc).

**ENTERED** this 25th day of February, 2011.

                                               s/ John S. Bryant
                                               JOHN S. BRYANT
                                               UNITED STATES MAGISTRATE JUDGE